1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    MICHAEL DENTON,

11                    Plaintiff,

12        v.

13    TIM THRASHER, et al.,

14                    Defendants.

CASE NO. 3:18-CV-5017-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: August 20, 2021

15        The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

16    States Magistrate Judge David W. Christel. Before the Court are Plaintiff's and Defendants'

17    Cross-Motions for Summary Judgment. Dkt. 156, 158, 166.

18        The Court concludes there is an issue of fact as to whether the administrative remedies

19    were effectively unavailable to Plaintiff. Therefore, the Court recommends denying both

20    Defendants' and Plaintiff's Cross-Motions for Summary Judgment on exhaustion and

21    recommends the Court hold an evidentiary hearing on the question of exhaustion. Based on the

22    foregoing, the Court declines to address the merits of the underlying claims and recommends the

23    parties' Cross-Motions for Summary Judgment be denied on the merits without prejudice.

24

# BACKGROUND

Plaintiff, now represented by counsel, filed this case in early 2018. *See* Dkt. 1. In his Fourth Amended Complaint (the "Complaint"), Plaintiff, a prisoner confined at Washington State Penitentiary ("WSP") in Walla Walla, Washington, alleges his constitutional rights were violated when he was retaliated against, his incoming mail was rejected, he was denied adequate medical care related to his mental health illness, and he was deprived of sanitation items and access to a toilet while housed in observation cells.  Dkt. 116.

In late 2019, Plaintiff filed the First Motion for Summary Judgment. Dkt. 120. The same day, Defendants filed the First Cross-Motion for Summary Judgment. Dkt. 121. After considering the Motions and record, the undersigned issued a Report and Recommendation ("R&R") recommending Plaintiff's First Motion be denied and Defendants' First Cross-Motion be granted. *See* Dkt. 137.

On June 29, 2020, the Honorable Benjamin H. Settle, the District Judge assigned to this case, entered an Order adopting the R&R in part and requesting supplemental briefing on the issue of exhaustion. Dkt. 142. On September 14, 2020, Judge Settle declined to adopt the R&R on the issue of exhaustion as to the January 1, 2018 grievance (Grievance No. 18647444) and re-referred the matter to the undersigned for further consideration. Dkt. 146. The undersigned reopened discovery with respect to the issue of exhaustion, and on March 23, 2021 set a new dispositive deadline of May 7, 2021. Dkt. 149, 155 (March 23, 2021 Order).

On May 7, 2021, Defendants filed the Second Motion for Summary Judgment on exhaustion. Dkt. 156. The same day, Plaintiff filed a Second Cross-Motion for Summary Judgment on exhaustion and the merits Dkt. 158. On May 20, 2021, Defendants filed a Motion for Relief to permit them to file a cross-motion for summary judgment and to set a briefing

1   schedule on the summary judgment motions. Dkt. 160. On June 1, 2021, Defendants filed a

2   Second Cross-Motion for Summary Judgment on the merits and Response to Plaintiff's Second

3   Motion for Summary Judgment. Dkt. 166. On June 7, 2021, Plaintiff filed Objections to the

4   Second Cross-Motion for Summary Judgment and Response. Dkt. 171.

5       On June 15, 2021, the Court granted Defendants' Motion for Relief (Dkt. 160) and

6   permitted Defendants to file the Second Cross-Motion for Summary Judgment on the merits of

7   Plaintiff's Eighth Amendment claims. Dkt. 172. The pending Second Cross-Motions for

8   Summary Judgment were re-noted for consideration on July 9, 2021. *See id.*

9       The questions currently before the Court are whether Plaintiff has presented sufficient

10  factual evidence to show a genuine dispute that the grievance process was unavailable to him,

11  and whether an evidentiary hearing is required to resolve the exhaustion issue.

12                      **SUMMARY JUDGMENT STANDARD OF REVIEW**

13      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

14  summary judgment if the movant shows that there is no genuine dispute as to any material fact

15  and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

16  is genuinely disputed must support the assertion by:

17          (A) citing to particular parts of materials in the record, including
            depositions, documents, electronically stored information, affidavits
18          or declarations, stipulations (including those made for purposes of the
            motion only), admissions, interrogatory answers, or other materials;
19          or
            (B) showing that the materials cited do not establish the absence or
20          presence of a genuine dispute, or that an adverse party cannot produce
            admissible evidence to support the fact.

21  Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

22  the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

23

24

1    Cir. 2013) (citing *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)); *Tarin v.*

2    *County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

3         As the party moving for summary judgment, Defendants have the initial burden to

4    demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477

5    U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir.

6    2010). The movant "always bears the initial responsibility of informing the district court of the

7    basis for its motion," and identifying those portions of the record, including pleadings, discovery

8    materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of

9    material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a

10   genuine issue of material fact exists does not preclude summary judgment. *California*

11   *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

12   Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and

13   whose existence might affect the outcome of the suit," and the materiality of which is

14   "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

15   *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

16        Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

17   grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

18   'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477

19   U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

20   longer can it be argued that any disagreement about a material issue of fact precludes the use of

21   summary judgment."). In other words, the purpose of summary judgment "is not to replace

22   conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

23   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

24   support an assertion of fact or fails to properly address another party's assertion of fact as

REPORT AND RECOMMENDATION - 4

1   required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

2   materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

3   Fed R. Civ. P. 56(e)(3).

4        When parties file cross-motions for summary judgment, as the parties have done here, each

5   motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v.*

6   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the evidence submitted

7   in support of each cross-motion. *Id*. And, although the parties may each assert there are no

8   uncontested issues of material fact, the Court must determine whether disputed issues of material

9   fact are present. *Id*.; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

10                              **DISCUSSION**

11        The Court allowed the parties to conduct additional discovery and also set a new

12   dispositive deadline. The Court now proceeds to consider the parties' exhaustion arguments based

13   on any newly discovered evidence and arguments raised in the newly filed dispositive motions.[1]

14

15

16

17   ---

[1] The undersigned previously recommended that the Court conclude that Plaintiff failed to exhaust his administrative remedies by completing the multi-stage grievance process implemented by the Washington Department of Corrections ("DOC"). Dkt. 137 at 13–17. Judge Settle declined to adopt the R&R on the issue of exhaustion, finding:

18

> In this case, the Court finds that, at the very least, Denton has established a question of fact whether any administrative process was available to him to appeal what he believed was an emergency medical grievance. The DOC protocol required a response within an hour. Denton, having not received a response, filed this complaint three days later on January 5, 2020. If the factfinder accepts Denton's allegation that he never received a response, then the reasonable conclusion follows that a three-day delay in failing to respond to an emergency medical grievance demonstrates that no available administrative remedy was available. Therefore, the Court declines to adopt the R&R on the issue of exhaustion and denies Defendants' motion for summary judgment on this issue.

19

20

21

22   Dkt. 146 at 4-5. With respect to whether Plaintiff was informed his grievance was deemed non-emergent, Judge Settle held, "Defendants have failed to submit any evidence to establish that Officer Long or any other officer informed Denton within one hour that his grievance was deemed non-emergent. In the absence of such direct evidence, the Court accepts Denton's declaration that he never received a response within one hour, or at all." Dkt. 146 at 4 (citing Dkt. 127 at ¶ 26).

23

24

REPORT AND RECOMMENDATION - 5

1  Defendants argue Plaintiff failed to exhaust his claims prior to filing this lawsuit on January 3,

2  2018. Dkt. 156. Plaintiff argues administrative remedies were unavailable. Dkt. 158, 164.

3  **A.  Legal Standard – Exhaustion**

4  Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first

5  exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995

6  ("PLRA"),

7  > No action shall be brought with respect to prison conditions under section 1983 of
   > this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

8  > correctional facility until such administrative remedies as are available are exhausted.

9  42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*,

10  532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's

11  grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all*

12  levels of an available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter*

13  *v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in

14  grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*,

15  532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d

16  1198, 1199 (9th Cir. 2002).

17  Failure to exhaust administrative remedies is properly brought as a summary judgment

18  motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was

19  an available administrative remedy and the offender failed to exhaust the available remedy, the

20  burden shifts to the plaintiff. The plaintiff must show there was something about his claim which

21  made the "existing and generally available administrative remedies effectively unavailable to him."

22  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103

23  F.3d 767, 778 n.5 (9th Cir. 1996)).

24

**B. Evidence** [2]

On December 31, 2017, Plaintiff was housed in a close observation area ("COA") cell in the Health Services Building ("HSB") at WSP. Dkt. 104 at 1-2 (Declaration of Defendant Sheldon Moore). At approximately 2321[3] hours, Plaintiff was placed on the restraint bed. *See* Dkt. 104-1 at 25.[4] Shortly thereafter, correctional officer Morris, who was assigned to watch Plaintiff while he was secured in the restraint bed, transcribed a grievance complaint.[5] Dkt. 104 at ¶ 9. Plaintiff states he asked officer Morris, who was observing him while he was immobile in the restraint bed, to transcribe three separate grievances for him about the conditions and treatment he had experienced that night, so that the grievances would only contain one issue and comply with the Offender Grievance Program Manual ("OGPM") policies. Dkt. 127 at ¶ 26 (Plaintiff's Declaration); Dkt. 144 at ¶ 6.

Officer Morris transcribed and submitted one emergency grievance regarding the issues, Grievance No. 18647444 (hereinafter "the Grievance"). Dkt. 98-1 at 2 (January 1, 2018 Emergency Grievance), Exhibit 2. At the top of the Grievance, the emergency box was checked.

---

[2] In support of their Motions for Summary Judgment, Defendants submitted the Declaration of Lieutenant Shawn Long and Declaration of Counsel. Dkt. 156, 157, 175. Plaintiff submitted the Declaration of Counsel Darryl Parker and Declarations of Plaintiff (Dkt. 164, 169). Both parties submit the COA HSB observation log from December 31, 2017 to January 1, 2018. *See id.*

Defendants also rely on the following evidence previously submitted in this matter: (1) Declarations of Rebecca Citrak, Jamie Davis, William Fletcher, Randal Keith Goodenough, Lindsay McIntyre, David McKinney, Sheldon Moore, Tammy O'Reilly, Karie Rainer, Richard Scholl, Timothy Thrasher, Allison Window, Daniel Bayer, Chris Bowman, Kevin Walker, and Defendant's Counsel; (2) Plaintiff's deposition; (4) portions of Plaintiff's DOC records; (5) portions of DOC policies; and (6) Plaintiff's mental health treatment notes. Dkt. 98-108, 122, 144.

Plaintiff also relies on previously submitted evidence: (1) Declaration of Plaintiff and exhibits attached; (2) Declaration of Darryl Parker, Plaintiff's counsel, and exhibits attached; (3) Declaration of James Moseley; and (4) additional records and files. Dkt. 120, 127, 128.

[3] The Court refers to the timing of events using a 24-hour clock to provide for consistency with relevant DOC documentation.

[4] The court refers to the CM/ECF page numbers in this exhibit for ease of reference.

[5] Neither Defendant Moore declaration's nor Plaintiff's declaration identify the name of the officer who transcribed the Grievance. *See* Dkt. 104, 126. The Grievance form states the Grievance was transcribed by correctional officer Morris due to Plaintiff's restraint bed placement. Dkt. 98-1 at 2.

Dkt. 98-1 at 2. The Grievance states Plaintiff was "cutting himself" and "bleeding," "blood was everywhere," and he was "banging his head against the wall." *Id.* The Grievance states Defendant Fletcher instructed staff to "do nothing" to help Plaintiff and that staff was antagonizing Plaintiff to "kill himself." *Id.*

When an emergency complaint is filed while a grievance coordinator is unavailable, it is sent to a Shift Lieutenant or other designee for determination of whether it should be treated as an emergency or routine grievance. Dkt. 144-1 at 13. Because Plaintiff was grieving the actions of the Shift Lieutenant of the South Complex, Defendant Moore, it was forwarded to Lieutenant Shawn Long. Dkt. 104 at ¶ 9; Dkt. 157, Declaration of Lt. Long at ¶ 3.

According to DOC grievance protocol, the process for an emergency grievance is as follows:

> For all emergency complaints involving serious medical issue, a licensed medical staff will make a determination of the need for medical attention. The individual responding to the emergency complaint must clearly state the medical staff decision on the form, note the date and time, legibly sign the form and ensure a copy is provided to the offender. The offender may appeal a non-emergent medical complaint response to the facility superintendent (OD duty officer after hours). Appeals must be filed within one (1) hour of receipt of the decision that your complaint does not meet the criteria of an emergent medical complaint. If the appeal is upheld, the complaint will be processed through routine channels. Complaints filed as an emergency, other than serious medical issue and determined not to be an emergent, will be processed through routine channels and is not appealable.

Dkt. 144-1 at 13. An emergency grievance under DOC policy is defined as a complaint that involves "a potentially serious threat to the life or health of an offender or staff member, relate[s] to severe pain being suffered by the offender, or that involve[s] a potential threat to the orderly operation of a facility, and its resolution would be too late if handled through routine administrative or grievance challenges." Dkt. 144-1 at 39.

Lt. Long states he spoke to medical staff about the Grievance. Dkt. 157 at ¶ 4. Lt. Long states medical staff explained they did not view the Grievance as an emergency because Plaintiff

1   had been evaluated for treatment and the self-harming had stopped with the placement on the

2   restraint chair and bed. *Id.* at ¶ 4. Lt. Long determined that the Grievance did not qualify as an

3   emergency grievance. *Id.*

4        At approximately 0115, Lt. Long entered Plaintiff's cell where Plaintiff was housed on

5   the restraint bed. Dkt. 157 at ¶ 5; Dkt. 100-1 at 7; Dkt. 107-1 at 10 (0115 entry). Lt. Long states

6   he informed Plaintiff of the determination that the Grievance was non-emergent during the

7   conversation at 0115 on January 1, 2018. Dkt. 157 at ¶ 5. Because Plaintiff was on the restraint

8   table, Lt. Long states Plaintiff could not be given a paper copy of the Grievance response, but a

9   copy was placed with Plaintiff's paperwork. Dkt. 157 at ¶ 6. There is no documentation in the

10   observation log regarding Lt. Long's dialogue with Plaintiff about the Grievance being deemed

11   non-emergent. *See* Dkt. 159-1 (December 31 WSP HSB COA Individual Observation Log, Ex.

12   B). According to the observation log, officer Morris did not document that Plaintiff filed the

13   Grievance until 0215. Dkt. 159-1 at 5.

14        The Grievance response was received by the WSP grievance office on January 2, 2018.

15   Dkt. 144 at ¶ 5. Under DOC policy, as a non-emergency grievance, the WSP grievance office

16   had five working days to respond to the Grievance, i.e. until January 8, 2018. Dkt. 144-1 at 26.

17   On January 3, 2018, Plaintiff initiated this lawsuit. Dkt. 1-1.

18        Kevin Walker, a WSP Grievance Coordinator at the time, reviewed the Grievance and

19   determined that it contained multiple issues. Dkt. 144 at ¶ 6. On January 9, 2018, Grievance

20   Coordinator Walker asked Plaintiff to rewrite the Grievance by January 17, 2018. *Id.* Grievance

21   coordinator Walker sent this response via interdepartmental mail to Plaintiff's cell. Dkt. 144 at ¶

22   7. Plaintiff did not rewrite the Grievance. Dkt. 144 at ¶ 7. Under DOC policy at the time, when

23   timeframes could not be met, the grievance coordinator was required to either provide a

24

1 | notification of an extension to the inmate or automatically move the Grievance to the next level.

2 | Dkt. 144-1 at 27. The DOC records do not reflect any correspondence from Plaintiff regarding

3 | the Grievance or asking for additional time. Dkt. 144 at ¶ 7.

4 | **C. Analysis**

5 | There is no dispute that a grievance process existed at WSP during the relevant time

6 | frame. The parties also do not dispute that Plaintiff filed the Grievance related to the actions of

7 | the correctional officers between December 31, 2017 and January 1, 2018 while Plaintiff was

8 | housed in the HOA cell.

9 | However, there is a genuine issue of material fact as to whether administrative remedies

10 | were effectively unavailable to Plaintiff.

11 | First, the parties dispute when Lt. Long received the Grievance and when it was filed. Lt.

12 | Long testified he received the Grievance at approximately 0030, around the time when the cell

13 | count cleared. Dkt. 157 at ¶ 3, 5. The log entry shows the cell count cleared around 0040 but

14 | does not indicate the Grievance was filed at that time. Dkt. 159-1 at 7. The log indicates the

15 | Grievance was not filed until 0215. Dkt. 159-1 at 5-6 (December 31 , 2017 WSP HSB COA

16 | Individual Observation Log) ("0215 Denton talking with inmate in D-02 – Filed emer. grievance

17 | – WM").[6]

18 | Second, the parties dispute whether Plaintiff was informed the Grievance was deemed

19 | non-emergent. A review of the observation log from December 31, 2017 to January 1, 2018

20 | indicates Lt. Long and Sgt. Cole spoke with Plaintiff at 0115 "about restraint bed placement."

21 |

22 | _____

23 | [6] Lt. Long did not provide the name and titles of the individuals he spoke with and failed to provide the date and time the Grievance was deemed non-emergent. Dkt. 144-1 at 13 (The OGPM states that "a licensed medical staff will make determination of the need for medical attention" and that "[t]he individual responding to the complaint must clearly state the medical staff decision on the form, note the date and time, legibly sign the form and

24 | ensure a copy is provided to the offender.").

1   Dkt. 159-1 at 5-6, According to the declaration of Lt. Long, he states he informed Plaintiff

2   during the conversation at 0115 that the Grievance was non-emergent. Dkt. 157 at ¶ 5. However,

3   there is no documentation in the log that Lt. Long and Sgt. Cole spoke to Plaintiff about the

4   Grievance or informed Plaintiff his grievance was deemed non-emergent. Dkt. 159-1 at 5-6.

5   Plaintiff declares Lt. Long and Sgt. Cole never spoke with him about the Grievance transcribed

6   and filed by officer Morris, and Plaintiff was never informed the Grievance was deemed non-

7   emergent. Dkt. 169 at ¶ 5.

8           This chronology of events and lack of detail raises an issue of fact as to when the

9   Grievance was filed and when and whether Plaintiff was informed of its non-emergent status.

10  *See* Dkt. 144-1 (if a grievance that is filed as emergent is determined to be non-emergent, the

11  prisoner must be notified within one hour of receipt of the complaint). A failure to respond to a

12  grievance within established time limits in a grievance policy has been found to render an

13  administrative remedy unavailable. *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).

14  The Ninth Circuit has "refuse[d] to interpret the PLRA so narrowly as to … permit [prison

15  officials] to exploit the exhaustion requirement through indefinite delay in responding to

16  grievances." *Brown v. Valoff,* 422 F.3d 926, 943 fn. 18 (9th Cir. 2005) (quoting *Lewis v.*

17  *Washington,* 300 F.3d 829, 831–32 (7th Cir. 2002)). *See also Foulk v. Charrier,* 262 F.3d 687,

18  698 (8th Cir. 2001) (affirming district court decision not to dismiss for failure to exhaust when a

19  Department of Corrections' failure to respond to a preliminary grievance precluded the plaintiff

20  from pursuing a formal grievance); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998). *See*

21  *also Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir. 2010) (Warden's mistake rendered

22  administrative remedies unavailable, thereby excusing inmate from his failure to exhaust);

23

24

1  *Brown v. Croak,* 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedies unavailable where

2  prison officials erroneously told the inmate he must wait until an investigation was complete).

3        Defendants argue Plaintiff's claim the grievance process was unavailable are foreclosed

4  by his sworn statements in the Complaint and First Amended Complaint. Dkt. 156 at 9-11.

5  Defendants argue Plaintiff should not be permitted to create an issue of fact by "retreating from

6  his prior position in his complaints." *Id.* The evidence reflects in the form civil rights complaint,

7  Plaintiff answered three questions related to the WSP grievance process. The first question is "Is

8  there a prisoner grievance procedure available at this institution?". Dkt. 1-1, 18. The second

9  question is "Have you filed any grievances concerning the facts relating to this complaint?". *Id.*

10  The third question is "Is the grievance process completed?". *Id.* Plaintiff checked "yes" to all

11  three questions. *See id.* Defendants now argue Plaintiff has apparently altered his position and

12  argued the grievance process was unavailable because he did not receive a response to the

13  Grievance. Dkt. 156 at 10 (citing Dkt. 112, 126).

14        However, the parties do not dispute there was a prisoner grievance process available at

15  WSP, nor do the parties dispute Plaintiff did file Grievance related to the facts at issue here. With

16  respect to whether the third question of whether the grievance process was completed, a prisoner

17  is not required to plead exhaustion in his complaint; it is an affirmative defense that must be

18  raised and proven by a defendant. *Jones v. Bock,* 549 U.S. 199, 216, (2007). Thus, the burden is

19  on Defendants to prove Plaintiff did not exhaust his claims, not for Plaintiff to prove he did

20  exhaust his claims. Second, any amended complaint acts as a complete substitute for the original

21  Complaint or prior Amended Complaints, and not as a supplement.  *Forsyth v. Humana, Inc.,*

22  114 F.3d 1467, 1474 (9th Cir. 1997) (An amended complaint supersedes the original complaint.)

23  *overruled in part on other grounds, Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012).

24

1    The Fourth Amended Complaint, the operative complaint in this matter, only states Plaintiff

2    exhausted all possible grievances and pursued all administrative remedies available to him. *See*

3    Dkt. 116 at 2. Therefore, the Court finds Defendants' argument unavailing.

4          Defendants also argue Plaintiff has failed to produce sufficient evidence to show that the

5    grievance process was unavailable when Plaintiff filed this lawsuit on January 3, 2018. *See* Dkt.

6    156, 170. However, since the evidence on record demonstrates an issue of fact as to whether

7    Plaintiff was informed of the emergent or non-emergent status of the Grievance within an hour

8    of receipt of the Grievance and whether the administrative remedies were available, the fact that

9    Plaintiff subsequently filed his complaint on January 3, 2018 is not dispositive at this stage in the

10   proceedings. *See Brown v. Valoff*, 422 F.3d 926, 943 n. 18 (9th Cir. 2005) ("We also note that,

11   again like all the other circuits that have considered the question, 'we refuse to interpret the

12   PLRA so narrowly as to…permit [prison officials] to exploit the exhaustion requirement through

13   indefinite delay in responding to grievances'…Delay in responding to a grievance, particularly a

14   time-sensitive one, may demonstrate that no administrative process is in fact available.")

15   (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)); *see also Jernigan v. Stuchell*,

16   304 F.3d at 1032; *see also Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (finding that a

17   district court did not err in declining to dismiss plaintiff's claim for failure to exhaust

18   administrative remedies when the prison administrators failed to respond to his grievance and he

19   did not file an appeal). Once the factual dispute as to whether an administrative grievance

20   process was available to Plaintiff has been resolved, and if the Court finds a process was

21   available to Plaintiff, the Court would then consider whether Plaintiff exhausted his remedies

22   prior to the filing of this lawsuit. *See Albino*, 747 F.3d at 1170.

23

24

1    In addition, Defendants cite to *Roberts v. Sinclair*, 832 Fed. App'x 511 (9th Cir. 2020),

2    arguing a disagreement with prison staff's determination that an emergency grievance was

3    nonemergent does not render administrative remedies effectively unavailable or excuse

4    exhaustion. However, as discussed above, the issue at hand here is not whether the Grievance

5    should have been processed as an emergency grievance, it is whether Plaintiff was informed that

6    his grievance was non-emergent and was not processed as an emergency grievance. Therefore,

7    *Roberts* is distinguishable from the circumstances of this case.

8    The record also reflects Plaintiff's allegations that officer Morris was unwilling to or

9    failed to transcribe and file three separate grievances as Plaintiff requested while he was in the

10    restraint bed on the night of December 31, 2017. According to the observation log from

11    December 31, 2017 and January 1, 2018, after officer Morris finished the first grievance,

12    Plaintiff began to dictate a second grievance at 0030 on January 1, 2018. Dkt. 159-1 at 6.

13    Plaintiff asked officer Morris to write a third grievance as well, but officer Morris did not

14    document this in the log. Dkt. 127 at ¶ 26. Officer Morris only transcribed and submitted one

15    emergency grievance about all of the issues, Grievance No. 18647444. Dkt. 98-1 at 2 (January 1,

16    2018 Emergency Grievance), Exhibit 2. However, filing three separate grievances would have

17    ensured that each grievance only contained one issue, in accordance with requirements in the

18    OGPM. Dkt. 144-1. By failing to transcribe and file all three requested emergency grievances,

19    there is an issue of fact as to whether Plaintiff was able to properly adhere to the proper

20    grievance process. *See Ross*, 136 S.Ct. at 1860 (2016) (administrative remedies are deemed

21    unavailable "when prison administrators thwart inmates from taking advantage of a grievance

22    process through machination, misrepresentation, or intimidation.").

23

24

1    In sum, the factual contentions raised by Plaintiff regarding exhaustion cannot be

2    resolved by way of summary judgment. Thus, the Court cannot resolve whether or not Plaintiff

3    had a reasonable opportunity to utilize the administrative remedies during the relevant time

4    frame or whether the administrative remedies were effectively unavailable to him without

5    examining all the facts and claims and weighing the evidence. *See, e.g., Marella v. Terhune*, 568

6    F.3d 1024, 1027 (9th Cir. 2009) (remanding exhaustion issue to district court where record

7    unclear as to whether prisoner injured in a knife attack at the hands of another prisoner had

8    access to the necessary grievance forms or the ability to timely file an appeal due to his stay in

9    the hospital, prison infirmary, and subsequent administrative segregation).

10    Judge Settle previously held "Defendants have failed to submit any evidence to establish

11    that Officer Long or any other officer informed Denton within one hour that his grievance was

12    deemed non-emergent. In the absence of such direct evidence, the Court accepts Denton's

13    declaration that he never received a response within one hour, or at all." Dkt. 146 at 4 (citing

14    Dkt. 127 at ¶ 26).  As reflected above, after the period of additional discovery, the evidence now

15    demonstrates a genuine issue of material fact as to whether Plaintiff was informed by Lt. Long,

16    or anyone else, that the Grievance was deemed non-emergent. Because the Court cannot make

17    credibility determinations on motion for summary judgment, the Court recommends that the

18    parties Cross-Motions for Summary Judgment on the issue of exhaustion be denied and the Court

19    hold an evidentiary hearing on the question of exhaustion. The undersigned recommends the

20    evidentiary hearing include the resolution of the following two issues: (1) whether an

21    administrative grievance process was available to Plaintiff; and (2) if a process was available to

22    Plaintiff whether Plaintiff exhausted his remedies. *See Albino*, 747 F.3d at 1170.

23

24

**CONCLUSION**

Based on the foregoing, the undersigned: (1) recommends the parties' Cross-Motions for Summary Judgment on the issue of exhaustion be denied (Dkt. 156, 158) subject to an evidentiary hearing; and (2) declines to address the merits of the underlying claims and recommends denying the parties Cross-Motions for Summary Judgment on the merits (Dkt. 158, 166) without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on August 20, 2021 as noted in the caption.

Dated this 3rd day of August, 2021.

David W. Christel
United States Magistrate Judge