UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

    Plaintiff,

v.

TIM THRASHER, et al.,

    Defendants.

CASE NO. 3:18-cv-05017-BHS

ORDER

This matter comes before the Court following an evidentiary hearing regarding whether Plaintiff Michael Denton exhausted his administrative remedies. Dkt. 181.

## I. BACKGROUND

Denton is currently incarcerated by the State of Washington and has been held in multiple state facilities during his term of incarceration. Dkt. 185 at 1. He is presently detained at Monroe Correctional Complex. *Id.* In his original and amended complaints, Denton claimed his previous jailors at the Washington State Correctional Facility in Walla Walla violated his constitutional rights by failing to provide him adequate medical and mental health treatment, depriving him access to magazines, retaliating against him for filing grievances, housing him in observations cells lacking toilets or running water,

failing to prevent him from self-harming, and punishing him for his mental health. *See* Dkts. 1-1, 11, 18, 64, 116. The surviving claim relates to a grievance Denton filed on January 1, 2018 asserting that prison officials failed to appropriately respond to him self-harming while he was on suicide watch. *See* Dkt. 116 (Denton's operative complaint); Dkt. 142 (Order dismissing all claims except those related to Denton's January 1, 2018 grievance). After that incident, while strapped to a restraint bed, Denton asked Corrections Officer Morris, who was observing him at the time, to transcribe three grievances for him. Dkt. 158 at 9. Officer Morris transcribed one grievance for Denton, which Denton indicated was to be filed as an emergency grievance. *Id.*

When an inmate files an emergency grievance, the grievance coordinator or designee is supposed to immediately determine whether the complaint meets the criteria of an emergency. Dkt. 144-1 at 14. If the complaint is deemed non-emergent, the coordinator or designee must respond to the inmate, in writing, within one hour to inform him that the grievance is being considered non-emergent. *Id.* The non-emergent complaint then proceeds through the normal grievance process. *Id.* While a medical complaint response must "list the name of the staff member and if possible, his/her signature, date, and time of the resolution," the same is not required for responses to complaints deemed non-emergent. *Id.* Prison officials have five working days to respond to a non-emergent complaint. *Id.* at 26.

Denton claims he did not receive timely notice regarding his grievance on January 1, 2018. Dkt. 185 at 5–6. Prison officials claim they timely explained to Denton that his grievance was being considered non-emergent. Dkt. 184 at 3–7. They also allege that

ORDER - 2

they did not provide Denton with a written copy of the response because he was strapped to a restraint bed at the time and because prisoners on suicide watch are not permitted to have paper. *Id.* Denton drafted his initial complaint in this suit on January 3, 2018. *See* Dkt. 1-1 at 18.

Denton and Defendants both moved for summary judgment in December 2019. Dkts. 120, 121. Denton sought summary judgment on the issue of liability for all of his claims and sought a permanent injunction to prevent Defendants from subjecting prisoners with mental illnesses to the same conditions that formed the basis of this lawsuit. Dkt. 120. Defendants moved the Court to dismiss all of Denton's claims with prejudice. Dkt. 121. In March 2020, the Honorable David W. Christel, United States Magistrate Judge, issued a report and recommendation ("R&R") recommending that the Court deny Denton's motion and grant Defendants' motion. Dkt. 137. This Court adopted Judge Christel's R&R in part, dismissing most of Denton's claims. Dkt. 142. But this Court disagreed with the R&R on the issue of exhaustion and requested additional briefing on whether Denton could have appealed the allegedly unreturned grievance. *Id.* After the parties filed their additional briefing, this Court declined to adopt Judge Christel's R&R on the exhaustion issue, holding that Denton had established a question of material fact. Dkt. 146. The parties again filed cross motions for summary judgment, both on the exhaustion issue and on the merits, asserting many of the same arguments previously considered. Dkts. 156, 158, 166.

Judge Christel issued another R&R recommending that the Court deny the parties' cross-motions for summary judgment on exhaustion and set an evidentiary hearing on the

exhaustion issue. Dkt. 176 at 16. Judge Christel also declined to address the merits of the underlying claims. *Id.* Defendants objected to the R&R, arguing that there is no genuine dispute of material fact that Denton failed to exhaust his administrative remedies. Dkt. 177. Denton responded, arguing that he exhausted to the extent he was able and was effectively denied his right to pursue administrative relief any further. Dkt. 179.

The Court adopted Judge Christel's R&R, Dkt. 180, and held an evidentiary hearing on December 13, 2021, Dkt. 181. Three people testified at the hearing: Plaintiff Michael Denton, Lieutenant Shawn Long, and Grievance Coordinator Kevin Walker. Dkt. 183. Denton's testimony was largely consistent with his briefing, and Long and Walker's testimony was largely consistent with Defendants' briefing. *See generally id.* Relevant portions of their testimony are discussed throughout this Order. At the close of the hearing, the Court requested supplemental briefing from the parties. Dkt. 181. Denton continues to argue that he was unable to exhaust his administrative remedies because he was never informed by Lieutenant Long that his grievance was being considered non-emergent. Dkt. 185. Defendants argue that Long did inform Denton that his grievance would proceed through the normal process and therefore Denton failed to exhaust because he did not wait for a response to his grievance, nor did he appeal the denial of his grievance. Dkt. 184.

## II.  DISCUSSION

If there is an exhaustion issue in a Prison Litigation Reform Act ("PLRA") case, exhaustion should be resolved before reaching the merits of the case, if feasible. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). "If there is a genuine dispute about material

facts, summary judgment will not be granted." *Id.* at 1169. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170–71 (internal citations omitted).

Failure to exhaust is an affirmative defense that the defendant in a PLRA case must plead and prove. *Id.* at 1171. The defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172 (internal citation omitted). If the defendant satisfies that burden, the burden of production shifts to the prisoner such that he must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "[T]he ultimate burden of proof remains with the defendant." *Id.*

The evidence presented in this case, including the testimony of the three witnesses, the prison logs, and Denton's grievance, is confusing and has made exhaustion a complicated question in this case—one that largely comes down to weighing the credibility of witness testimony and the degree to which the scant documentary evidence supports that testimony. Ultimately, the Court finds Lieutenant Long's testimony credible and finds that the record supports his testimony. Even if Denton does not recall Lieutenant Long informing him that the grievance was being treated as non-emergent, that does not mean it did not happen. Denton himself admits he was in the throes of a mental health crisis. This is certainly not to say that such a circumstance renders his testimony completely incredible. However, based upon the relative credibility between

Lieutenant Long and Denton and their respective demeanors while testifying, as well as their respective abilities to recall the events of December 31, 2017 and January 1, 2018, the Court credits Lieutenant Long's recollection and testimony over Denton's.

Additionally, the limited evidence in the record tends to support Lieutenant Long's testimony. The log shows that Officer Morris finished transcribing the first grievance[1] at 12:30 a.m. Dkt. 159-1 at 6. Lieutenant Long and Sergeant Cole talked to Denton at 1:15 a.m. *Id.* The log only indicates that they talked about the "restraint bed placement." *Id.* Denton argues that this entry proves that Long did not speak to Denton about the grievance. Dkt. 185 at 6. While the log entry does not specifically indicate that they spoke about the grievance, it definitively proves that Long spoke to Denton that night.

The log then indicates that the emergency grievance was "filed" at 2:15 a.m. Dkt. 159-1 at 6. Denton argues that entry proves that the grievance had yet to be filed at the time Long talked to Denton and thus that Long never spoke with Denton about the emergency grievance. Dkt. 185 at 6. The Court's understanding and best read of the evidence is that the grievance was sent to and examined by Long sometime between 12:30 a.m. and 1:15 a.m., Long decided it was not an emergency, he entered Denton's

---

[1] The evidence is unclear on what happened to the other one or two grievances that Denton claims Officer Morris transcribed for him. The log indicates that a second grievance was started, but that grievance has never been offered or admitted into evidence. There is no indication that the second grievance was ever completed nor that a third grievance was even started. Nevertheless, whether those grievances ever existed does not matter for the resolution of this case. This case is only about the first grievance, which Denton classified as an emergency grievance. While the suppression of other grievances could, in theory, suggest some sort of conspiracy against Denton and his ability to exhaust, no evidence has been presented to support such a theory.

1 | room at 1:15 a.m. and told Denton the grievance would proceed through the regular
2 | process, and then he "filed" the grievance in accordance with regular grievance
3 | procedures at 2:15 a.m.
4 |       The grievance itself also supports Long's testimony. Long wrote on the grievance
5 | that it did "not meet the criteria of an emergency complaint" and that it would "be
6 | processed as routine." Dkt. 98-1 at 2. It is true that Long did not indicate the date or time
7 | he wrote this note, but that was not required. *See* Dkt. 144-1 at 14.
8 |       The parties also dispute whether this was, in fact, a medical issue that should have
9 | been addressed in an emergency medical grievance. That matter is not for this Court to
10 | decide and ultimately has no bearing on this case. But it is worth noting that the
11 | Department of Correction's internal guidelines do not seem to require medical personnel
12 | to comment on a medical grievance. *See* Dkt. 144-1. The guidelines only require the
13 | reviewing officer to determine whether the complaint meets the criteria of an emergency
14 | and, presumably, whether the complaint is medical-related. *See id.* Lieutenant Long
15 | contends that he determined the complaint was for staff misconduct, not medical related
16 | issues, and that he consulted with medical staff. Dkt. 183 at 48.
17 |       Moreover, it appears that Denton had the opportunity to exhaust his grievance
18 | even after he had already filed this lawsuit. The Grievance Manual states that an inmate
19 | "may file a tort claim and a grievance regarding the issue at the same time." Dkt. 144-1 at
20 | 29. However, that does not exempt an inmate from the PLRA's exhaustion requirements.
21 | While Denton seems to imply that he never received a response to his grievance, the
22 |

documentary evidence suggests that the grievance was, in fact, responded to and Denton did not appeal. *See id.* at 43.

The only remaining claim in this case related to Denton's grievance. Because the Court finds that Denton failed to exhaust his administrative remedies for that grievance, the claims relating to that grievance are **DISMISSED**. The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

Dated this 18th day of March, 2022.

BENJAMIN H. SETTLE
United States District Judge